Patricia Schuppert, *Pro Se* Plaintiff
3806 23rd Avenue
Forest Grove, OR 97116
arellanop88@yahoo.com

FILED 19 NOV '19 13:03 USDC-ORP

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON—PORTLAND DIVISION

| | |
|---|---|
| PATRICIA SCHUPPERT, an individual<br><br>Plaintiff,<br><br>v.<br><br>**ORCHARD SUPPLY COMPANY, LLC,** a foreign limited liability company, dba **ORCHARD SUPPLY HARDWARE**; a wholly owned subsidiary of **LOWE'S COMPANIES, INC.**, a foreign corporation, **LOWE'S HOME CENTERS, LLC**, a foreign limited liability company<br><br>Defendants. | Case No. 3:19-CV-1865-AC<br><br>**COMPLAINT**<br><br>ORS 659A.030(1)(a), (b) Discrimination Based on Gender/Sexual Harassment; 42 U.S.C. § 2000e-2(a)(1), (2) Discrimination Based on Gender/Sexual Harassment; ORS 659A.030(1)(f) Retaliation for Opposing Unlawful Practices; 42 U.S.C. 2000e-3(a) Discrimination for Opposing Gender Discrimination Sexual Harassment and Discrimination based on Race; ORS 659A.199 Retaliation for Reporting Violation of Law, Rule, or Regulation<br><br>**JURY TRIAL REQUESTED** |

## NATURE OF THE CASE

1. Plaintiff Patricia Schuppert (formerly known as Patricia Arellano) brings this action against Defendants to remedy discrimination based on gender and race, sexual harassment and retaliation for exercising her right to object to unlawful discrimination in the workplace in violation of ORS 659A.030, 659A.199 and 42 U.S.C. § 2000e (2) and (3).

2. Defendants subjected Plaintiff to retaliation and discrimination by terminating her employment because she opposed the sexually hostile work environment and racist employment practices.

3. These claims are brought for non-economic damages, economic damages,

Page 1 – **COMPLAINT**

equitable relief, and for damages to compensate Plaintiff for the loss of her job, including lost wages and benefits, past and future medical expenses, as well as physical and emotional distress and loss of reputation in the community.

4. This is also an action to vindicate Plaintiff's rights and the rights of other employees to work in an environment free from discrimination based on sex, sexual harassment and race. For this reason, Plaintiff also seek injunctive relief.

## JURISDICTION AND VENUE

7. This court has jurisdiction pursuant to 28 U.S.C. § 1331.

8. This court has jurisdiction over plaintiff's state law claims set forth in this complaint pursuant to supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

9. Actions complained of herein took place within the jurisdiction of the United States District Court, District of Oregon. Accordingly, venue in this judicial district is proper under 28 U.S.C. § 1391.

## PROCEDURAL REQUIREMENTS

10. Plaintiff timely filed charges of unlawful employment practices with the Oregon Bureau of Labor and Industries ("BOLI"), Civil Rights Division; and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has satisfied all administrative requisites before filing this lawsuit. On August 22, 2018, plaintiff filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI"), co-filing with the EEOC, alleging gender discrimination, sexual

harassment, and retaliation for reporting unlawful employment practices. *See* BOLI Case No. EEEMSX180823-91292 and EEOC Case No. 38D-2018-00803. Following an investigation, BOLI issued a right to sue letter on August 23, 2019.

5. Thus, the complaint has been timely filed in regard to all included state and federal law claims.

## PARTIES

6. Plaintiff was at all material times a resident of and citizen of the State of Oregon. She currently does not have a permanent home address.

7. Defendant Orchard Supply Company, LLC formerly known as and/or doing business as Orchard Supply Hardware ("OSH") was at all relevant time a foreign limited liability company, registered to conduct business in Oregon, and was plaintiff's employer.

8. OSH is a fully owned subsidiary of one or more of the following companies: Lowe's Companies, Inc.; Lowe's Home Centers Inc.; or Lowe's Home Centers, LLC (collectively, "OSH" or "Defendants").

9. Lowe's Home Centers, LLC, is a foreign limited liability company registered in Oregon to conduct and doing business in Oregon at all material times.

10. Lowe's Companies, Inc. has represented to BOLI during investigation that it is the owner of Plaintiff's previous employer Orchard Supply Hardware, and is estopped from taking any contrary position, despite that it has failed to register to conduct business in Oregon.

11. At all material times, Defendant Lowe's Companies, Inc. was the parent corporation of Orchard Supply Company, LLC. As the parent corporation, Defendant Lowe's Companies, Inc. is vicariously liable for all the tortious acts and omissions of Orchard Supply Company, LLC and its employees, committed within the course and scope of their employment.

Page 3 – **COMPLAINT**

12. At all material times, Defendants Lowe's Companies, Inc. and Orchard Supply Company, LLC were the direct employers and/or joint employers and/or indirect employers of plaintiff.

## FACTUAL BACKGROUND

13. Ms. Schuppert began working at for Defendants as a Nursery Associate on May 12, 2017.

14. Ms. Schuppert is female. She speaks Spanish and is Hispanic and Indian.

15. OSH employees wear headsets so that they can communicate with each other regarding customer service needs throughout the store.

16. One OSH employee, a "greeter," was in the practice of announcing "we have a special customer" any time a Hispanic customer came into the OSH store, because she considered Hispanic customers to be suspicious and more likely to steal. As a result of the alert, OSH employees followed Hispanic customers around the store and watched them more closely than white customers.

17. In July of 2017, Ms. Schuppert reported to Kevin Bunce, Assistant Store Manager, that she believed the practice of calling Hispanic customers "special" and following them around the store was illegal.

18. Mr. Bunce acknowledged Ms. Schuppert's report and promised to talk with the OSH employee making the announcement.

19. However, the employee did not stop making the "special customer" comments.

20. In August of 2017, Ms. Schuppert came to the OSH store in a dress and-high heels to check her work schedule for the week. The next day, when she arrived at work, her coworker Bob Triplett told her he liked how she looked in the dress and asked for her phone

Page 4 – **COMPLAINT**

number.

21. Ms. Schuppert reported Mr. Triplett's comment to Larry Goldstein, Tools Department Lead.

22. In July of 2017, Ms. Schuppert reported to Kevin Bunce, Assistant Store Manager, that she believed the practice of calling Hispanic customers "special" and following them around the store was illegal.

23. Mr. Bunce acknowledged Ms. Schuppert's report and promised to talk with the OSH employee making the announcement.

24. However, the employee did not stop making the "special customer" comments.

25. In August of 2017, Ms. Schuppert came to the OSH store in a dress and-high heels to check her work schedule for the week. The next day, when she arrived at work, her coworker Bob Triplett told her he liked how she looked in the dress and asked for her phone number.

26. Ms. Schuppert reported Mr. Triplett's comment to Larry Goldstein, Tools Department Lead.

27. Mr. Triplett began to follow Ms. Schuppert to her car when she took her breaks. She felt intimidated and was afraid that Triplett would corner her in her car.

28. Ms. Schuppert reported to Mr. Bunce that Mr. Triplett had been sexually harassing her and intimidating her. Mr. Bunce's only response was to recommend that Ms. Schuppert keep a journal regarding any incidents with Mr. Triplett.

29. In approximately August of 2017, Craig Nordness was hired as Ms. Schuppert's supervisor. He frequently called Ms. Schuppert "woman." Ms. Schuppert found this very offensive and she felt devalued to be called "woman" instead of by her name. Ms. Schuppert

Page 5 – **COMPLAINT**

corrected Mr. Nordness and told him to call her "Patty." However, he did not stop referring to her as "woman."

30.　In early September of 2017, Ms. Schuppert lost her housing and was homeless. Mr. Goldstein found out that Ms. Schuppert was homeless and offered to let her stay with him in his house. Within a week of staying with Mr. Goldstein, he sexually assaulted her. The same day, he kicked Ms. Schuppert out of his house.

31.　Ms. Schuppert lived on the street for the next two weeks, before she was able to stay with her niece.

32.　When Ms. Schuppert arrived at work the day after the assault, she was very upset and she told Mr. Bunce what had happened with Mr. Goldstein. Ms. Schuppert was extremely emotional. Mr. Nordness told her that he was sorry and that Ms. Schuppert should try to avoid the Tools Department, where Mr. Goldstein worked.

33.　Neither Mr. Bunce nor any other manager ever discussed the assault with Ms. Schuppert again. Her complaint was never acknowledged, nor was she offered any accommodation or reassurance about her safety.

34.　At the end of September or early October, another nursery associate, Michael Davito, told Ms. Schuppert that she should hug him. Ms. Schuppert reported this to Mr. Bunce and Tom Rocek, the Store Manager, because she felt sexually harassed. She was told that they would take care of the issue; however, no action was taken.

35.　Within a few weeks, Mr. Davito asked Ms. Schuppert if she considered wearing makeup to work. He told her he liked "his women" to wear makeup.

36.　On October 19, 2017, towards the end of Ms. Schuppert's shift, Mr. Nordness told her to use a blower to clean the nursery department of the store.

Page 6 – **COMPLAINT**

37. Due to the nature of her work, it made it difficult to know the exact closing of store, manager Craig [Nordness], had not done the door check.

38. At about 9:00 p.m. or shortly thereafter, Ms. Schuppert allowed Shane Panter, a frequent customer and the brother of an OSH employee, to come into the store and use the bathroom. She did not realize that the store was closed and she recognized Mr. Panter as a frequent customer and the family member of a coworker.

39. After Mr. Panter used the restroom, Mr. Nordness escorted him out of the OSH store.

40. Ms. Schuppert went home on the evening of October 19, 2017, having no idea that she had done anything that would violate store policy.

41. On or about October 26, 2017, Mr. Bunce called Ms. Schuppert into his office to write a statement about her allowing the OSH employee's brother to use the bathroom.

42. Ms. Schuppert was later informed that, on October 26, 2017, Mr. Bunce directed two other employees to write statements regarding Ms. Schuppert allowing Mr. Panter to use the bathroom.

43. Ms. Schuppert continued to be upset with the way she was treated and the inaction on the part of OSH management regarding the severe and pervasive sexual harassment and the discriminatory treatment of Hispanic customers.

44. Therefore, on or about October 28, 2017, Ms. Schuppert called OSH's ethics hotline from the OSH Training Room. She found the phone number on a poster in the staff lunch room.

45. Ms. Schuppert reported the company's negative treatment of Hispanic customers and the sexual harassment she experienced. She also reported OSH's failure to address her

Page 7 – **COMPLAINT**

concerns, even after she reported them to numerous OHS managers.

46. When Ms. Schuppert called the ethics hotline, she was referred to an ethics website. She did not receive any other support or advice.

47. The OSH Training Room is next to the break room. When Ms. Schuppert exited the Training Room, she passed Mr. Bunce in the hallway and told him, "I just got off the phone with the ethics hotline because I'm tired of this and there's nothing else I can do." As Ms. Schuppert walked away, she saw Mr. Bunce go into Mr. Rocek's office.

48. The next day, October 29, 2017, Ms. Schuppert was fired by Mr. Bunce and another OSH manager, Nathan [last name unknown]. In her termination meeting, Ms. Schuppert was told she was fired for letting Mr. Panter use the OSH bathroom on October 19, 2017.

49. Ms. Schuppert had never received any warnings or discipline regarding her job performance. She also had never received any warning specific to the October 19, 2017 incident.

50. Ms. Schuppert was fired due to sex discrimination and sexual harassment, and for opposing unlawful behavior, including race discrimination and sexual harassment.

## FIRST CLAIM FOR RELIEF

**(ORS 659A.030(1)(a)(b) – Gender Discrimination/Sexual Harassment)**

51. Plaintiff incorporates by reference the allegations in paragraphs 1 through 50.

52. Defendants treated Ms. Schuppert adversely with respect to the terms, conditions, and privileges of employment. Ms. Schuppert's gender was a substantial reason for Defendant's treatment.

53. Defendants treated Ms. Schuppert adversely because of her gender in the following ways:

   a) Permitting a co-worker to stalk her even after Ms. Schuppert complained of the

conduct and told management she did not feel safe;

b) Through her supervisor, repeatedly referring to Ms. Schuppert as "woman" over Ms. Schuppert's objections;

c) Sexual Assault by Lead Team employee Mr. Goldstein

d) Failing to provide Ms. Schuppert with protection from the Lead Team employee who had assaulted her.

e) Fostering a work environment in which another male employee told Ms. Schuppert to hug him, referred to her as "woman," and told her she should wear makeup to work because he liked his "women to wear makeup."

54. Defendants knew about Ms. Schuppert's working conditions and intentionally maintained those conditions by failing to act to remedy the hostile work environment.

55. Defendants discriminated against Ms. Schuppert in the terms, conditions, and/or privileges of her employment due to her gender.

56. The actions by Defendants and its agents, owners, and employees, were taken within the course and scope of their duties.

57. Ms. Schuppert's protected activity was the cause of the retaliatory actions and decisions by Defendants to terminate her employment.

58. As a direct and proximate consequence of Defendants' unlawful discriminatory conduct, Ms. Schuppert suffered economic damages including but not limited to loss of wages and loss of benefits including medical and retirement benefits. Ms. Schuppert is entitled to an award of lost wages and benefits in an amount set forth in the prayer, plus prejudgment interest.

59. As a direct and proximate consequence of Defendants' unlawful discriminatory conduct, Ms. Schuppert suffered economic damages including medical expenses, in an amount

set forth in the prayer.

60. As a direct and proximate consequence of Defendant's unlawful discriminatory conduct, Ms. Schuppert has suffered and continues to suffer severe emotional distress, exacerbation of a previous infirm mental health condition, post-traumatic stress disorder, mental pain and anguish, depression, anxiety, humiliation, loss of self-esteem, and loss of enjoyment of life. Ms. Schuppert is entitled to noneconomic compensatory damages sufficient to compensate her for her emotional pain and suffering and other non-economic losses in an amount set forth in the prayer and as awarded by a jury or as otherwise determined by law.

61. Ms. Schuppert is entitled to equitable relief, including the expungement of any negative references in his personnel file, any working file, or other actors' file.

62. Ms. Schuppert is entitled to attorneys' fees and costs, including expert witness fees, pursuant to ORS 20.107 and ORS 659A.885.

## SECOND CLAIM FOR RELIEF

### (42 U.S.C. § 2000e-2(a)(1), (2) – Gender Discrimination/Sexual Harassment)

63. Plaintiff incorporates by reference the allegations in paragraphs 1 through 62.

64. Defendants discriminated against plaintiff by maintaining a sexually hostile work environment in violation of 42 U.S.C. § 2000e-2.

65. Defendants discriminated against plaintiff by terminating her employment in substantial part due to her gender.

66. Ms. Schuppert is entitled to attorneys' fees and costs, including expert witness fees, pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

### (ORS 659A.030(1)(f) – Retaliation for Reporting Unlawful Employment Practices)

Page 10 – **COMPLAINT**

67. Plaintiff incorporates by reference the allegations in paragraphs 1 through 66.

68. Ms. Schuppert opposed gender discrimination, sexual harassment and race discrimination to management level employees.

69. Ms. Schuppert reported the following including but not limited to:

   a. In July of 2017, to Kevin Bunce, Assistant Store Manager, that she believed the practice of calling Hispanic customers "special" and following them around the store was illegal.

   b. In August 2017, to Mr. Bunce that Mr. Triplett had been sexually harassing, stalking and intimidating her.

   c. Multiple times, direct opposition to Mr. Nordness who was calling her "woman" that he should instead call her by her name, "Patty".

   d. To Mr. Bunce that Mr. Goldstein had sexually assaulted her.

   e. At the end of September or early October, to Mr. Bunce and Store Manager Tom Rocek, that another nursery associate, Michael Davito, told her that she should hug him and it made her feel sexually harassed.

   f. On or about October 28, 2017, to the Ethics Hotline the company's negative treatment of Hispanic customers and the sexual harassment she experienced, as well as OSH's failure to address her concerns, even after she reported them to numerous OSH managers.

70. Defendants retaliated against Ms. Schuppert by firing her in substantial part because of her opposition to unlawful employment practices related to women, sexual harassment, and minorities.

71.     The actions by Defendants and its agents, owners, and employees, were taken within the course and scope of their duties.

72.     Ms. Schuppert's protected activity was the cause of the retaliatory actions and decisions by Defendants and their agents, owners, and employees.

## FOURTH CLAIM FOR RELIEF

### (42 USC 2000e-3(a) Opposition to Gender and Race Discrimination)

73.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 72.

74.     Defendants retaliated against plaintiff by terminating her employment in substantial part because she opposed gender discrimination, sexual harassment and/or race discrimination in violation of 42 U.S.C. § 2000e-3.

75.     Ms. Schuppert is entitled to attorneys' fees and costs, including expert witness fees, pursuant to 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF

### (ORS 659A.199– Retaliation for Reporting Violation of Law)

76.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 75.

77.     Plaintiff's reports of race discrimination, gender discrimination and a sexually hostile work environment constitute conduct she in good faith believed was unlawful in that it violated a law, rule or regulation.

78.     Defendants' acts of retaliation and termination of plaintiff were in violation of ORS 659A.199.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the court to:

1.     Assume jurisdiction over each of the causes set forth herein.

2. Grant a permanent injunction enjoining defendants, its owners, officers, management personnel, employees, agents, successors, and assigns, and all persons in active concert or participation with defendants, from engaging in employment practices which discriminate on the basis of race, gender, or whistleblowing on such terms as the court may direct.

3. Order defendants to carry out and institute policies, practices, and programs providing for equal employment opportunities that affirmatively eradicate the effects of past and present unlawful employment practices, on such terms as the court may direct.

4. Order defendants to make plaintiff whole by compensating plaintiff for past and future pecuniary losses, including expenses, impairment of earning capacity, lost past and future earnings and benefits of employment, and such other losses as are awarded by a jury or otherwise established at trial not to exceed $300,000.

5. Order defendant to pay plaintiff awards of compensatory damages for non-pecuniary losses, including physical and emotional injury, pain and suffering, mental anguish, humiliation, and embarrassment, and loss of enjoyment of life in an amount to be determined by a jury in an amount not to exceed $750,000.

6. Order defendant to assess an award of punitive damages against the defendant in an amount to be determined by a jury.

7. Award plaintiff her costs of suit and her reasonable attorney fees, costs, and expert witness fees pursuant to 42 U.S.C. § 1988 and ORS 659A.885.

8. Order defendant to pay prejudgment and post judgment interest, as appropriate, on all amounts due to plaintiff as a result of this action.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

DATED this 12 day of November, 2019

By: *Patricia Schuppert*
Patricia Schuppert, pro se Plaintiff
3806 23rd Avenue
Forest Grove, OR 97116
arellanop88@yahoo.com

Pro Se Plaintiff